UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARMINE BROWNE,

               Plaintiff,

       -v-

ARROW SECURITY,

               Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/8/2025

**OPINION AND ORDER**

24-CV-9788 (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Plaintiff Sharmine Browne ("Plaintiff") brought this action against her former employer, Aron Security[1] ("Defendant"), alleging that she was discriminated against because of her age in violation of federal, state, and municipal laws. Defendant moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion is **GRANTED**. Plaintiff has until **October 8, 2025** to file an amended complaint.

## I.    FACTUAL BACKGROUND

The following facts are drawn from the Complaint ("Compl."), ECF No. 1, and Plaintiff's Opposition to the Motion to Dismiss ("Pl. Opp."), ECF No. 26, and are assumed to be true for purposes of this motion. Plaintiff began working for Defendant, a company that supplies security and fire safety personnel, in March

---

[1] Although the Complaint identifies Plaintiff's former employer as "Arrow Security," Defendant states that its correct name is "Aron Security, Inc." Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Mem.") at 1, ECF No. 13. Accordingly, this Opinion and Order refers to Defendant as "Aron."

2023.  Compl. at 30; Pl. Opp. at 15.  The supervisor who hired Plaintiff was Kenneth Prashad.  Pl. Opp. at 15.  In or about July 2023, Plaintiff was promoted to Lead Fire and Life Safety Director.  Compl. at 9.

During her tenure, Plaintiff was subject to a domineering supervisor, Patrick Oladipou, who made threats against Plaintiff and others.  *Id.*  At one point, he made a critical comment about Plaintiff's request for a whiteboard in her workspace.  *Id.* In response, Plaintiff announced her intention to quit her job, but decided to stay after speaking with Prashad.  *Id.*

A different supervisor, Ms. Raphella, spread rumors that Plaintiff physically abused her.  *Id.*  After being informed of this, management intervened and Raphella apologized to Plaintiff.  *Id.*

Although Prashad was the person who had hired Plaintiff, that relationship soured, and Plaintiff found herself targeted and harassed by Prashad.  *Id.* at 6; Pl. Opp. at 5.  At various times, Prashad spoke negatively about Plaintiff.  *See* Compl. at 6, 10.  Plaintiff does not describe these remarks in detail or explain how they were conveyed to her.  As a result, Plaintiff attempted to resign on four occasions. *Id.* at 6.  Prashad also boasted about his status as a former NYPD officer and his asserted influence within the security industry.  *Id.* at 20.  At some point, another supervisor promised Plaintiff that Prashad would not be present at her worksite. *Id.* at 19.

On August 5, 2023, Plaintiff heard from two of her subordinates that Prashad had made an age-related comment about her.  *Id.* at 6.  More specifically, Prashad allegedly told two new employees that Plaintiff "is an older woman, who is bitter, a bitch, she wants to control everything, but she is not going nowhere and to watch out for her."  *Id.* at 18.  According to Plaintiff, August 5, 2023 was when she first learned about age discrimination against her, *id.* at 15, suggesting that Plaintiff was not aware of Prashad mentioning her age previously.  Plaintiff alleges that Prashad was encouraged by others in management to make these remarks, but the Complaint does not describe Plaintiff's basis for making this allegation.  *Id.* at 6.

Plaintiff quit her job on August 8, 2023, three days after learning of Prashad's remarks.  *Id.* at 7.  Later, Prashad contacted Plaintiff to ask if she had quit.  *Id.*  In response, Plaintiff told Prashad she had heard about his derogatory comments.  *Id.*  After Prashad denied making these statements, Plaintiff attempted to call Mike Depaolis, another manager, but was unable to speak with him.  *Id.* Later in September, Plaintiff contacted Defendant's VP of Human Resources and informed him of Prashad's discriminatory statements.  *Id.* at 15.

Although Plaintiff found another job at Kent Security soon thereafter, she claims that Defendant spread negative rumors about her both to her new employer and throughout the security industry, which hampered her career and ultimately left her unable to find stable employment.  *Id.* at 8.  Plaintiff alleges that Aron has sabotaged her career outside the security industry as well.  Pl. Opp. at 13.

On May 31, 2024, Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC").  Compl. at 17.  She received a Right to Sue letter on October 3, 2024.  *Id.* at 16.

## II.    PROCEDURAL HISTORY

Plaintiff filed the Complaint on December 18, 2024, asserting claims under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621 to 634.  Compl. at 4–5.  On December 23, 2024, Judge Rochon dismissed the individual defendant from the case, but found that the Complaint "can also be construed as asserting claims under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 131."  ECF No. 7.

On February 3, 2025, Defendant filed the instant Motion to Dismiss, ECF No. 12, supported by a Memorandum of Law, ECF No. 13, and the Affirmation of Saul D. Zabell.  ECF No. 14.  Plaintiff filed her Opposition to the Motion to Dismiss on March 24, 2025, ECF No. 26, and Defendant filed its reply brief on April 7, 2025. ECF No. 29.  On May 14, 2025, the parties consented to Magistrate Judge jurisdiction.  ECF No. 34.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, a court accepts all factual allegations in the

complaint as true and draws all reasonable inferences in the plaintiff's favor. *See,*
*e.g., Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir.
2013). To survive dismissal, a plaintiff must allege "enough facts to state a claim to
relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007). Facial plausibility exists when the plaintiff "pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,
550 U.S. at 556). "Importantly, the 'plausibility' standard applies only to a
complaint's *factual* allegations. [The Court] give[s] no effect at all to 'legal
conclusions couched as factual allegations.'" *Citigroup*, 709 F.3d at 135 (quoting
*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir. 2007)).

### B. Standards for *Pro Se* Litigants

While *pro se* complaints are read liberally "to raise the strongest arguments
that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.
2006) (citation omitted), they still must state a plausible claim for relief. *Walker v.
Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Thus, a district court should dismiss a *pro
se* plaintiff's complaint if it "fail[s] to meet minimum pleading requirements."
*Kinsey v. Bloomberg*, No. 12-CV-8936 (PAE) (JCF), 2014 WL 630670, at *3 (S.D.N.Y.
Feb. 18, 2014).

Submissions made by *pro se* plaintiffs are held "to less stringent standards
than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)
(internal quotations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)

5

(courts are "obligated to construe a *pro se* complaint liberally").  As a result, the

Court may consider allegations that appear in a *pro se* plaintiff's motion papers or

other submissions to the Court as well as in her pleadings.  *See, e.g., Freud v.*

*N.Y.C. Dep't of Educ.*, No. 21-CV-2281 (MKV), 2022 WL 889213, at *4 (S.D.N.Y.

Mar. 25, 2022) (courts "may also consider factual statements made in the *pro se*

Plaintiff's opposition to the motion to dismiss" (citing *Walker*, 717 F.3d at 122 n.1)).

Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading;

"dismissal . . . is proper if the complaint lacks an allegation regarding an element

necessary to obtain relief."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387

(S.D.N.Y. 2009) (cleaned up).

## IV.   ANALYSIS

Plaintiff alleges that she was discriminated against based on her age,

subjected to a hostile work environment, and was retaliated against.  Compl. at 4–5.

Defendant argues that the Complaint fails to plead any cause of action.  *See* Def.

Mem. at 1.  The Court will address these arguments in turn, including Plaintiff's

potential claims under state and city laws, which were not expressly asserted in the

Complaint.

### A.    Plaintiff Fails to Plead a Claim for Age Discrimination

The ADEA provides, "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).  ADEA claims are analyzed under the same burden-shifting framework as Title VII claims.  *See Doe v. Columbia Univ.*, 831 F.3d 46, 56 n.9 (2d Cir. 2016); *Valtchev v. City of N.Y.*, 400 Fed. App'x 586, 592 (2d Cir. 2010).  Under Title VII, a plaintiff must show "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation."  *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original).

Before 2019, claims under the New York State Human Rights Law ("NYSHRL") were analyzed under the same framework as ADEA claims.  *See, e.g.*, *Szewczyk v. City of N.Y.*, No. 15-CV-918 (MKB), 2016 WL 3920216, at *8–9 (E.D.N.Y. July 14, 2016).  However, in 2019 the NYSHRL was amended "render[ing] the standard for [NYSHRL] claims closer to the standard of the NYCHRL." *Livingston v. City of N.Y.*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).  Accordingly, the Court will apply the same standard to Plaintiff's NYSHRL and New York City Human Rights Law ("NYCHRL") claims.  Under the NYCHRL, a plaintiff need not allege an adverse employment action, but must instead allege

that she was treated differently or less well than other employees. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). While the NYCHRL has a more liberal pleading standard, a plaintiff still must "allege facts giving rise to an inference of discrimination based on age to prevail." *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)).

Plaintiff was born in 1983, Compl. at 4, and Defendant does not dispute that she is a protected individual under the ADEA. There is also no dispute on this motion that she was qualified for her role as a Lead Fire and Life Safety Director.

However, Plaintiff fails to allege an adverse employment action, which is required under the ADEA. A plaintiff sustains an adverse employment action if she "endures a materially adverse change in the terms and conditions of employment." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (internal quotations omitted). To be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (cleaned up). "A change that is materially adverse could consist of, *inter alia*, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (cleaned up).

As Plaintiff acknowledges, Defendant did not terminate her. Compl. at 7; Pl.

Opp. at 2. Plaintiff quit her job. *Id.* Nor does Plaintiff allege that she was

demoted, transferred, or subjected to any concrete change of the terms of her

employment. Further, isolated discriminatory comments do not constitute an

adverse employment action. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998) ("[S]imple teasing . . . offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the terms and

conditions of employment.") (cleaned up). Accordingly, the Complaint fails to allege

adverse employment action, which is required to plead an ADEA discrimination

claim.

The core inquiry under the NYSHRL and the NYCHRL is whether Plaintiff

alleges that Defendant "treated her less well, at least in part for a discriminatory

reason." *Cruz v. Bernstein Litowitz Berger & Grossman LLP,* No. 20-CV-8596 (VF),

2023 WL 2691456, at *7 (S.D.N.Y. Mar. 29, 2023) (addressing, *inter alia*, age

discrimination claims) (quoting *Mihalik*, 715 F.3d at 110 n.8). While Plaintiff

alleges various forms of mistreatment on the job, she fails to explain how her

treatment was different from that experienced by other comparable employees.

Moreover, the Complaint makes no connection between Plaintiff's age and any

alleged mistreatment experienced at the hands of Oladipou and Raphella.

The only factual allegation supporting Plaintiff's claim of age discrimination

is Prashad's statement to several of Plaintiff's subordinates, first brought to

Plaintiff's attention on August 5, 2023.  Although "even a single comment may be actionable in the proper context" under the NYCHRL, *Mihalik*, 715 F.3d at 113, the NYCHRL is "not a general civility code."  *Id.*  Indeed, age-related "petty slights" are not actionable under the NYCHRL.  *See Nelson v. Argyropoulous,* No. 18-CV-11413 (AT), 2021 WL 4352313, at *2 (S.D.N.Y. Sept. 24, 2021) ("[U]nder the NYCHRL, isolated incidents of unwelcome verbal . . . conduct have been found to constitute the type of petty slights and trivial inconveniences that are not actionable.") (internal quotations omitted).  While Prashad described Plaintiff as "an older woman," the more substantive portion of his statement was that she was "bitter, a bitch, she wants to control everything, but she is not going nowhere, and to watch out for her."  Compl. at 18.  Viewed in the context of the remainder of his alleged statement, Prashad's reference to Plaintiff's age was secondary.  As presently pleaded, Prashad's remarks amount to "no more than a petty slight," and are thus not actionable age discrimination.  *Nofal v. IMCMV Times Square LLC*, 22-CV-3104 (DEH), 2024 WL 1138928, at *4 (S.D.N.Y. Mar. 15, 2024).[2]

Further, a discrimination claim under the NYCHRL requires consideration of the totality of the circumstances and the overall context of the challenged conduct, *Cruz*, 2023 WL 2691456, at *16, and there must be a discriminatory motive for any

---

[2] *See also Cruz*, 2023 WL 2691456, at *16 (finding a "lone, stray remark[ ]" to be insufficient to infer discrimination under the NYCHRL); *Wei v. Anthem Inc.,* No. 16-CV-468, 2018 WL 5622571, at *13 (E.D.N.Y. Sept. 4, 2018) ("[N]otwithstanding the uniquely broad and remedial purpose of the NYCHRL . . . this isolated incident of unwelcome verbal conduct is insufficient to support an age discrimination claim under NYCHRL's broad provisions.") (cleaned up).

complained-of conduct.  *Nofal*, 2024 WL 1138928, at *4.  Here, Prashad was the
supervisor who had hired Plaintiff.  Pl. Opp. at 15.  He presumably was aware of
Plaintiff's age at the time.  Later, Prashad apparently convinced Plaintiff not to quit
after her run-in with Oladipou.  Compl. at 9.  Further, Plaintiff was promoted in
July 2023.  *Id.*  The only allegation suggestive of age discrimination is the
statement conveyed to Plaintiff on August 5.  The Complaint's reference to this
stray remark, made soon after Plaintiff's promotion and immediately before she
quit, is not sufficient to plead that Defendant treated Plaintiff differently from other
employees, at least in part *because of her age*, which is what the NYSHRL and
NYCHRL require for an age discrimination claim.

Reading the Complaint liberally in light of Plaintiff's *pro se* status, Plaintiff
could be claiming that she was subjected to a constructive discharge, *i.e.*, that
conditions were so unbearable that she had no choice but to quit her job.  *See*
Compl. at 28 ("Loss of income (Quit) due to hostile work environment designed by
Arrow's Leadership").  "To establish a 'constructive discharge,' a plaintiff must show
that the employer deliberately made [her] working conditions so intolerable that
[she was] forced into an involuntary resignation."  *Stetson v. NYNEX Serv. Co.*, 995
F.2d 355, 360 (2d Cir. 1993) (cleaned up).  However, dissatisfaction with
assignments, being subject to unfair criticism regarding the quality of work, or
difficult or unpleasant working conditions are not sufficient to show constructive
discharge.  *Id.*  A plaintiff must demonstrate that her working conditions were "so

11

difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019) (quoting *Bauers-Toy v. Clarence Cent. Sch. Dist.*, No. 10-CV-00845, 2014 U.S. Dist. LEXIS 60358, at *87–88 (W.D.N.Y. Feb. 6, 2014)). "In addition, to state a prima facie case of constructive discharge, [a plaintiff] must establish that the constructive discharge 'occurred in circumstances giving rise to an inference of discrimination on the basis of [his] membership in [a protected] class.'" *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir. 1996)).[3]

Plaintiff fails to plead constructive discharge. She does not allege that anyone made an age-related comment to her directly. Instead, she alleges that other employees reported derogatory comments that Prashad had made outside of Plaintiff's presence. Compl. at 6. Plaintiff herself asserts that Prashad's remarks did not substantively affect her relationship with her subordinates and coworkers, who were sympathetic to her. *Id.* The other unpleasant treatment alleged—abusive conduct by Olapidou and rumors spread by Raphella—were not connected to Plaintiff's age, and are therefore not relevant to this claim. The Complaint does not sufficiently connect Prashad's earlier hostile treatment of Plaintiff to her age, particularly in light of his initial favorable treatment of Plaintiff.

---

[3] The standard under the NYCHRL is nearly identical: the plaintiff must show that the employer "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign." *Crookendale v. N.Y.C. Health & Hosps. Corp.*, 175 A.D.3d 1132, 1132 (1st Dep't 2019) (internal quotations omitted).

Even construing her claims in the most favorable light due to her *pro se* status, and drawing all inferences in her favor as the nonmoving party, Plaintiff's allegations fail to meet the standard for a constructive discharge. The only age-related comment that is alleged did not make Plaintiff's work environment "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Walsh*, 375 F. Supp. 3d at 478 (quoting *Bauers-Toy*, 2014 U.S. Dist. LEXIS 60358, at *87–88). Moreover, the Complaint contains no plausible factual allegations that management "deliberately made [her] working conditions so intolerable that [she was] forced into an involuntary resignation." *Stetson*, 995 F.2d at 360 (cleaned up). By her own account, management listened to Plaintiff's complaints and attempted to address them. They also praised and promoted her. Compl. at 9.

Accordingly, Plaintiff fails to state a claim for age discrimination under the ADEA, the NYSHRL or the NYCHRL.

### B.    Plaintiff Fails to State a Claim for Hostile Work Environment

A hostile work environment claim under the ADEA requires showing that "the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment. . .'" *Brennan v. Metro. Opera Ass'n,* 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To establish a hostile work environment, plaintiffs must 'prove that the incidents were sufficiently continuous

13

and concerted to be considered pervasive.'" *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007) (quoting *Brennan*, 192 F.3d at 318).[4]

Here, the only age-related insults that Plaintiff alleges were experienced secondhand.  Compl. at 6.  Further, Plaintiff quit her job just three days after hearing about them.  *Id.* at 6–7.  While "[t]he mere fact that [a plaintiff] was not present when a . . . derogatory comment was made will not render that comment irrelevant to his hostile work environment claim," it must be part of "a pervasive or continuing pattern of conduct."  *Schwapp v. Town of Avon,* 118 F.3d 106, 111–12 (2d Cir. 1997); *see also Tavares v. Sam's Club,* 178 F. Supp. 2d 96, 102 (D. Conn. 2001) (holding that when "plaintiff has not alleged that *any* . . . derogatory statements were ever made to her or in her presence," remarks later relayed to the plaintiff are insufficient to meet the "severe or pervasive" standard).  The Complaint falls far short of alleging such a pattern of conduct.

Stray comments, even when made directly to the employee, do not create a hostile work environment under the ADEA.  *See Schwapp*, 118 F.3d at 110–11 ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (cleaned up).  Even if it had been made to Plaintiff directly, Prashad's

---

[4] The NYCHRL, and therefore the NYSHRL after 2019, makes no distinction between a claim premised on unlawful discrimination and one premised on a hostile work environment.  *Rothbein v. City of N.Y.*, 18-CV-5106 (VEC), 2019 WL 977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019).  Because Plaintiff fails to state a claim for unlawful discrimination under the NYCHRL, as discussed in Section IV.A, she also fails to state a claim for a hostile work environment under the NYCHRL.

reference to Plaintiff's age would not constitute a steady barrage of opprobrious age-related comments.

The remaining conduct alleged by Plaintiff—Oladipou's abusive behavior and not speaking highly of Plaintiff, and Raphella's spreading rumors about Plaintiff assaulting her—have no relationship to Plaintiff's age or any other protected characteristic. *See Baez v. Amazon.com Servs., LLC*, 659 F. Supp. 3d 339, 353 (E.D.N.Y. 2023) (dismissing hostile work environment claim where "Plaintiff does not allege how [her manager's] purportedly hostile behavior, occurring 'on a routine basis,' had any relationship or connection at all to Plaintiff's protected characteristic.").

Even under liberal pleading standards, Plaintiff has failed to allege a hostile work environment because the only discriminatory conduct alleged was not "severe or pervasive" and the remaining acts alleged lacked any relation to her age.

## C. Plaintiff Fails to State a Claim for Retaliation

A claim for retaliation under the ADEA is governed by the *McDonnell Douglas* framework. *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023). "[T]o establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Id.* at 180. The analysis is substantially similar for claims under the NYCHRL (and therefore the

NYSHRL), except that at stage three of the analysis, the plaintiff need only show that the employer "engaged in conduct that was reasonably likely to deter a person from engaging in such [protected] action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).

### 1. Protected Activity

Defendant argues that Plaintiff never engaged in a protected activity because she "alleges only a handful of occasions in which she complained to any individual with supervisory authority." Def. Mem. at 4. However, a complainant need not go through formal channels to engage in protected activity. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (explaining that "informal protests" of discrimination, such as "making complaints to management," are protected activities).

Plaintiff alleges that on August 8, she "informed [her] account manager Patrick Oladipo [sic] about the situation." Compl. at 7. From context, the "situation" was hearing that Prashad had made a derogatory reference to Plaintiff's age. *Id.* Plaintiff also claims that on August 14, 2023, she spoke directly to Prashad—a supervisor—about his comments. *Id.* Finally, Plaintiff claims she emailed Defendant's Vice President of Human Resources, Patrick Fierro, complaining about Prashad's comments in September. *Id.* at 15.

Plaintiff has therefore alleged that she complained to management about discriminatory conduct based on her age and has met the first and second prongs of the *McDonnell Douglas* test.

16

### 2.    Adverse Employment Action

As discussed in Section IV.A above, Plaintiff fails to plead an adverse employment action during her time working for Defendant.  However, "[a]dverse actions in the retaliation context are defined more broadly than in the discrimination context."  *Hollington v. CDM Fed. Programs Corp.*, No. 22-CV-4940 (ER), 2023 WL 2457057, at *9 (S.D.N.Y. Mar. 10, 2023) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).  For purposes of a retaliation claim, adverse employment actions are "not limited to discriminatory actions that affect the terms and conditions of employment."  *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 64.

Plaintiff alleges that Defendant sabotaged her job at another security company and prevented her from obtaining other jobs.  Compl. at 8, 19–22.  She further claims that "Kenneth [Prashad] and others are collectively working together to block my professional growth and any opportunity to stabilize my employment."  Compl. at 19.  In her opposition, Plaintiff argues that disputes with her current employer, not in the security industry, are also the product of sabotage by Defendant.  Pl. Opp. at 13–14.

While attempting to harm a former employee's job prospects could constitute an adverse action for purposes of a retaliation claim, Plaintiff makes no plausible, non-conclusory allegation that this occurred.  *See Hollington*, 2023 WL 2457057, at *10 (S.D.N.Y. Mar. 10, 2023) (dismissing claim that employer retaliated against employee where the plaintiff failed to allege facts establishing a non-conclusory

17

blackballing claim); *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034 (JPO), 2020 WL 4547317, at *4 (S.D.N.Y. Aug. 6, 2020) (dismissing retaliation claim where plaintiff did "not offer any evidence to support the allegations of the so-called 'blackballing' made in her complaint.") (cleaned up); *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 343 (S.D.N.Y. 2009) (at summary judgment, rejecting a similar claim because the plaintiff had not provided any evidence of communication by defendants to plaintiff's future or potential employers).

Plaintiff makes no non-conclusory factual allegation that Defendant communicated with other potential employers. To be sure, Plaintiff alleges that, during her employment, Prashad claimed he could block hiring in the security industry due to his status as a former NYPD officer. Compl. at 20. And Plaintiff alleges that, after she left Aron, she encountered individuals who were familiar with Aron. *Id.* at 21–22. Where the Complaint falls short is in alleging facts to support a reasonable inference that Prashad or anyone else at Aron actually communicated with other employers in a way that harmed Plaintiff.

Instead, Plaintiff describes various challenges she has encountered in finding and retaining employment. The problem with Plaintiff's allegations is that they are far more consistent with the typical challenges of a job search than they are with Defendant's sabotage. *See Ashcroft*, 556 U.S. at 679. To start, Plaintiff quickly found a job at Kent Security after leaving Aron, despite her interviewer being an

Aron alumnus.  Compl. at 7.  While at Kent Security, Plaintiff encountered another

Aron alumnus, Rodney Lopez, who made positive comments about Plaintiff to her

supervisor.  Compl. at 8.  Plaintiff speculates that Prashad somehow soured her

relationships at Kent Security, but makes no non-conclusory factual allegations to

support this claim.  *See* Compl. at 8.  Plaintiff says she then quit her job at Kent

Security in late December 2023 due to "other issues" that arose there.  Compl. at 8.

When Plaintiff applied for other jobs in early 2024, several potential

employers asked why Plaintiff had left her last three jobs, which were at Kent

Security, Aron, and Securitas (presumably before Aron).  Compl. at 20, 22–23.

Potential employers expressed concern about Plaintiff's short tenure with her last

three employers and questioned whether this constituted "a pattern."  *See* Compl. at

21.  This is not an unusual or suspicious question for a potential employer to ask.

Another potential employer made negative comments about Plaintiff's lack of

reliable phone service, which does not suggest any malign influence by Defendant.

*See* Compl. at 20–21.  Plaintiff also points to a remark a supervisor made after

Plaintiff found herself in a dispute with a coworker at Home Goods, but fails to

provide any logical connection between that incident and her employment at Aron.

*See* Pl. Opp. at 12–13.  Further undermining this retaliation claim are Plaintiff's

allegations that *other employers* she worked for *before* Defendant induced Prashad

to mistreat her.  *Id.* at 16.

Because Plaintiff has not plausibly alleged a retaliatory action, the Court can dismiss Plaintiff's ADEA claim for retaliation without reaching the fourth prong of the *McDonnel Douglas* test.  For the same reasons, Plaintiff also fails to make plausible allegations of conduct reasonably likely to deter a person from engaging in protected activity under the NYCHRL and NYSHRL.

### D.    Leave to Amend

 "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation omitted).  "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted).  Plaintiff has not yet amended her complaint, and at this juncture, the Court cannot definitively say that Plaintiff could not amend her complaint to allege a viable cause of action.

Accordingly, while the Court grants Defendant's motion, Plaintiff will have the opportunity to amend her complaint to cure the deficiencies identified in this Opinion and Order.

## V.    CONCLUSION

For these reasons, Defendant's motion to dismiss is **GRANTED**.  Plaintiff has until **October 8, 2025** to file an amended complaint.

20

**SO ORDERED.**

Dated: September 8, 2025
      New York, New York

_____
Henry J. Ricardo
United States Magistrate Judge